[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15869

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-21566-CV-ASG

NOEL DOORBAL,

                                                    Petitioner-Appellant,

versus

DEPARTMENT OF CORRECTIONS,
Walter A. McNeil, Secretary,

                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2009)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This appeal involves a spree of murder and mayhem so heinous and bizarre that one would expect to see it only in a crime drama on television, but the only issue of law presented by this appeal borders on frivolous. Noel Doorbal was sentenced to death in Florida following his convictions of armed robbery, racketeering, armed kidnapping, first-degree arson, grand theft, burglary of a dwelling, and murder. Doorbal appeals the denial of his petition for a writ of habeas corpus. The district court ruled that Doorbal's claim of ineffective assistance of counsel was barred from federal review because the Supreme Court of Florida had applied a state rule of procedure to refuse to adjudicate his claim on collateral review. Because that procedural rule was an adequate and independent ground under state law for refusing to adjudicate Doorbal's claim, we affirm.

## I. BACKGROUND

We divide our discussion of the background in two parts. We first discuss Doorbal's crimes. We then discuss the procedural history of Doorbal's appeals in state and federal court.

### A. Doorbal's Crime Spree

Doorbal's convictions stemmed from extortion plots aimed at two individuals: Marc Schiller and Frank Griga. In 1994, Marc Schiller, a wealthy businessman in Miami, hired Jorge Delgado to work for his company, which

provided services reimbursed by Medicare.  Doorbal v. State (Doorbal II), 983 So.2d 464, 469 (Fla. 2008).  Delgado later purchased the portion of the business that received Medicare reimbursements.  Id.  In October 1994, Daniel Lugo, a friend of Delgado who often performed the billing for the Medicare business, convinced Delgado that Schiller had cheated them out of money they were owed in connection with the business.  Id.  Delgado asked Lugo to do whatever was necessary to recover the money due them.  Id.  Lugo contacted Doorbal and two other individuals and devised a plot to kidnap Schiller and force him to sign over his assets to settle the alleged debt.  Id. at 469–70.

On November 15, 1994, Doorbal and his accomplices abducted Schiller by shocking him with a stun gun and forcing him into a van.  Id. at 470.  The kidnappers handcuffed and blindfolded Schiller and took him to a warehouse at gunpoint.  Id.  Lugo, Doorbal, and the other kidnappers demanded Schiller make a list of his assets, and when he refused, they slapped him, shocked him with a stun gun, and beat him with a firearm.  Id.  When he continued to refuse to list his assets, they threatened him with a game of Russian Roulette and threatened to abduct his wife and rape her in his presence.  Id.

Schiller eventually agreed to comply with the demands of his captors if his wife and children were allowed to leave the country unharmed.  Id.  Over the

3

following days, Schiller signed a quitclaim deed for his home and various documents that granted access to his checking, savings, and IRA accounts, and he changed the beneficiaries on his insurance policies, which were worth millions of dollars. Id. While the kidnappers held Schiller captive, Doorbal and Lugo went to Schiller's home and removed furnishings and other items. Id. Doorbal and the others used Schiller's credit cards to charge thousands of dollars in expenses. Id. The kidnappers also stole money from Schiller's home safe. Id.

After three weeks, Delgado and Doorbal convinced Lugo that Schiller could likely identify his kidnappers and should be killed. Id. They forced Schiller to drink alcohol, drove his vehicle into a utility pole on a Miami street, and placed Schiller in the front seat of the vehicle so that it would appear that he had been involved in a drunk driving accident. Id. Doorbal and Lugo then poured gasoline on the vehicle and set it on fire. Id.

Schiller escaped the vehicle and was staggering in the roadway when Doorbal and Lugo persuaded another kidnapper to drive a car over Schiller. Id. Doorbal and the other kidnappers then fled the scene. Id. Schiller survived and was taken to a Miami hospital, where he received treatment for a broken pelvis, ruptured bladder, bruises and burns, and temporary paralysis. Id. at 470–71.

When the kidnappers learned that Schiller had survived the attack, they

4

visited the Miami hospital with the intent to suffocate Schiller with a pillow.  Id. at 471.  Schiller was not at the hospital because, based on fears for his safety, he had arranged to be airlifted to a New York hospital.  Id.  After they discovered that Schiller was no longer in Miami, Doorbal and the others ransacked Schiller's home and pillaged the remainder of Schiller's furnishings and valuables, but Doorbal's crime spree did not end there.  Id.

In 1995, Doorbal learned from his girlfriend about Frank Griga, a wealthy Miami businessman, and became "enthralled" with Griga's wealth and possessions, including a yellow Lamborghini car.  Doorbal v. State (Doorbal I), 837 So. 2d 940, 948 (Fla. 2003).  Doorbal targeted Griga for kidnapping and extortion, recruited Lugo, and arranged a business meeting with Griga under the guise of discussing Griga's interest in investing in telephone lines in India.  Id.  Griga showed little interest, but Doorbal and Lugo persisted and visited Griga's home twice in May of 1995.  On the second visit, they invited Griga to dinner and lured Griga and his girlfriend, Krisztina Furton, to Doorbal's apartment.  Id.

The next day, Delgado met Lugo and Doorbal at Doorbal's apartment, and Lugo informed Delgado that Doorbal had killed Griga following a scuffle.  Id. at 949.  During the scuffle, Furton began to scream when she realized that Griga was injured.  Id.  Lugo subdued her with an injection of Rompun, a horse tranquilizer,

5

handcuffed her, and Doorbal and Lugo then questioned her about the security code for Griga's home.  Id.  When Furton refused to answer, Doorbal injected her with more Rompun, and Furton eventually died.  Id.

Doorbal and the others then transferred the bodies to a warehouse, where they dismembered the bodies using a chain saw and hatchet.  Id. at 950.  They attempted to burn the heads, hands, and feet of Griga and Furton, but were unsuccessful.  Id.  They disposed of the bodies, which were later recovered and identified.  Id. at 950–51.

### B.  Procedural History

Doorbal was arrested and, at trial, was convicted of two counts of first-degree murder, conspiracy to commit racketeering, racketeering, two counts of kidnapping, armed kidnapping, attempted extortion, two counts of grand theft, attempted first-degree murder, armed robbery, burglary of a dwelling, first-degree arson, armed extortion, and conspiracy to commit a first-degree felony.  For each murder, the jury recommended the death penalty by a vote of eight to four, and the trial court sentenced Doorbal to death for each murder.

Doorbal unsuccessfully raised several issues in his direct appeal of his convictions and sentences, including the erroneous admission of character evidence.  Id. at 954.  Doorbal argued "that harmful error occurred when various

6

witnesses for the State made statements" about Doorbal's bad character. Id.

Because Doorbal failed to object to the testimony at trial, the Supreme Court of

Florida reviewed the admission of the testimony under the standard for

"fundamental error, . . . which requires that an offending comment 'reach[ ] down

into the validity of the trial itself to the extent that a verdict of guilty or jury

recommendation of death could not have been obtained without the assistance of

the alleged error.'" Id. at 954–55 (quoting McDonald v. State, 743 So. 2d 501,

505 (Fla. 1999)). The court stated that it "doubt[ed] the[] relevancy" of the

statements, but their admission was not fundamental error because the comments

were "relatively isolated" and other evidence of guilt was "overwhelming." Id. at

956.

The Supreme Court of Florida also rejected Doorbal's challenges to the

prosecutor's closing arguments during the guilt and penalty phases. Doorbal

challenged arguments by the prosecutor in the guilt phase that commented on

Doorbal's right to remain silent. Id. The Supreme Court of Florida concluded that

the arguments were not fundamental error because they "did not affect the jury's

verdict" in the light of the "magnitude of physical and testimonial evidence" of

Doorbal's crimes. Id. at 957. Doorbal also argued that arguments by the

prosecutor "violated the prohibition against 'Golden Rule' arguments, [which]

7

asked jurors to place themselves in the position of the victim." Id. The court concluded that, in the light of the "mountain of . . . evidence [that] established Doorbal's responsibility for the crimes," the remarks did not "affect the jury's verdict" and did not rise to the level of fundamental error. Id. Doorbal also argued that arguments by the prosecutor during the penalty phase that urged the jury to show "no mercy" constituted fundamental error, but the court disagreed and stated that, "while erroneous, the prosecutor's 'no mercy' comments do not rise to the level of error such that the jury's recommendation of death could not have been made without reliance upon them." Id. at 958–59. The Supreme Court of Florida affirmed Doorbal's convictions and sentences. Id. at 963.

Doorbal then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 and raised 21 grounds, including a claim of ineffective assistance of counsel for failure to object to the prosecutor's improper closing arguments that were the subject of the direct appeal. Doorbal II, 983 So. 2d at 473 & n.2. The trial court granted an evidentiary hearing on one claim that involved trial counsel's failure to obtain a mental health evaluation. Id. at 474. The trial court "denied the other claims as either meritless, procedurally barred, or insufficiently pled." Id.

The trial court rejected Doorbal's claims of ineffective assistance of counsel

about the failure to object to the closing arguments of the prosecutor. The trial court ruled that the claim about the prosecutor's arguments during the guilt phase was foreclosed because the standard for prejudice, under Strickland v. Washington, 466 U.S. 668, 687, 691–92, 104 S. Ct. 2052, 2064, 2066–67 (1984), was the same as that for fundamental error and the Supreme Court of Florida had ruled on direct appeal that the prosecutor's arguments were not fundamental error. The court also rejected Doorbal's claim about the failure to object to the prosecutor's "no mercy" argument during the penalty phase.

An evidentiary hearing was held on Doorbal's claim about counsel's failure to obtain a mental health evaluation, but Doorbal declined to present witnesses. Doorbal II, 983 So. 2d at 475. The trial court "concluded that Doorbal had failed to produce a primary basis for relief on [the mental health] claim . . . and denied the claim." Id. On February 16, 2005, the trial court entered an order denying Doorbal's amended motion. Id.

Doorbal appealed the denial of postconviction relief to the Supreme Court of Florida and "present[ed] six claims on review," including the denial of his claims without an evidentiary hearing and the form of the order of the trial court. Id. at 475–89. As to the merits of Doorbal's claims, the Supreme Court of Florida "conclude[d] that this issue [wa]s insufficiently pled" because Doorbal failed to

9

"state[] the substance of any of the claims that were summarily denied [and failed to] provide[] an explanation why summary denial was inappropriate or what factual determination was required." Id. at 482. Because Doorbal also failed to preserve the underlying claim for review on appeal, the "claim [wa]s waived." Id. at 482–83. The Supreme Court of Florida stated that "[v]arious claims raised by Doorbal in this 3.851 proceeding were plagued by a lack of sufficiency in that Doorbal failed to allege a specific omission or overt act upon which his claim of ineffective assistance was based." Id. at 483. The court even went so far as to use Doorbal's pleading deficiencies as a warning for other counsel who represent postconviction movants sentenced to death:

> [T]he rule 3.851 proceedings in the trial court, and on appeal before this Court, have been plagued by generality and lack of specificity. . . . We strongly reiterate to those who represent capital defendants in postconviction proceedings that claims of ineffective assistance of counsel must comply with the pleading requirements enunciated by this Court . . . to be legally sufficient under the rule.

Id. at 484.

Doorbal argued that "the form of the order denying relief fails to provide [the Florida Supreme] Court with guidance for appellate review because it does not reference hearings, transcripts, or any portion of the record[,]" but the Supreme Court of Florida rejected this argument. Id. at 489. The Supreme Court of Florida

10

concluded that the order of the trial court "provide[d] a specific basis why the trial court denied each claim without an evidentiary hearing." Id. The court also stated that "the adequacy of the summary denial order is arguably moot" because the court had determined that Doorbal failed to preserve that claim and it was waived. Id. at 489 n.12. The court affirmed the decision of the trial court denying postconviction relief. Id. at 500.

Doorbal then filed a petition for a writ of habeas corpus in a federal district court and presented, among others, a claim of ineffective assistance of trial counsel based on the failure to object to the closing arguments by the prosecutor. The district court rejected Doorbal's claim of ineffective assistance of counsel because the decision of the Supreme Court of Florida that the claim was waived was an independent and adequate ground under state law that barred federal review. The district court stated that, because "the Florida Supreme Court imposed a procedural bar to Doorbal's claim of ineffectiveness of trial counsel, this claim [wa]s not properly before [the district court] for habeas review." The district court also ruled alternatively that Doorbal's claim of ineffective assistance of counsel failed on the merits. The district court concluded that the decision of the state trial court on collateral review that Doorbal failed to prove prejudice because he failed to establish fundamental error on direct appeal was not contrary

11

to, or an unreasonable application of, Strickland, 466 U.S. at 687, 691–92, 104 S. Ct. at 2064, 2066–67. See, e.g., Gordon v. United States, 518 F.3d 1291, 1298 (11th Cir. 2008). The district court nevertheless granted a certificate of appealability for Doorbal's claim of ineffective assistance of counsel.

## II. STANDARDS OF REVIEW

In habeas proceedings, this Court reviews the findings of the district court for clear error and "its legal conclusions and mixed questions of law and fact de novo." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 768 (11th Cir. 2003). "[W]hether a particular claim is subject to the doctrine of procedural default . . . is a mixed question of fact and law, which we review de novo." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).

## III. DISCUSSION

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 129 S. Ct. 1769, 1780 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)). The Supreme Court has "held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to

12

adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Id. The adequacy of the procedural bar is not a matter of state law, but "is itself a federal question." Id. (internal quotation marks omitted).

We apply a three-part test to determine whether the state decision rested upon an "independent and adequate" ground under state law:

> First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law." Finally, the state procedural rule must be adequate; i.e., it must not be applied in an arbitrary or unprecedented fashion [or be manifestly unfair].

Judd, 250 F.3d at 1313 (quoting Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990)).

In his brief and at oral argument, Doorbal urged us to consider first the merits of his claim of ineffective assistance of counsel, but in Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997), the Supreme Court explained that we are ordinarily bound to consider first any issue of procedural default:

> A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system. We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.

The district court concluded that it could not review Doorbal's claim of ineffective assistance of counsel because of his procedural default in his appeal before the Supreme Court of Florida, and Doorbal fails to provide a sound reason for varying from the ordinary rule of reviewing that issue first.

Doorbal presents two arguments about his procedural default. First, Doorbal argues that the procedural rule applied by the Supreme Court of Florida to bar his claim was not "firmly established and consistently applied." Second, Doorbal argues that he appealed only the sufficiency of the order by the trial court that denied his postconviction motion and did not address the merits of the issues he alleged in that motion. Both arguments fail.

The Supreme Court of Florida followed its well-established rule when it concluded that Doorbal's claim of ineffective assistance of counsel was waived because he failed to present an argument about the merits of that issue on appeal. Doorbal II, 983 So. 2d at 482. The court cited Smith v. State, 931 So. 2d 790, 800 (Fla. 2006), for the procedural rule "that vague and conclusory allegations on appeal are insufficient to warrant relief" and concluded that Doorbal's attack on the merits of the order of the trial court was waived because he "neither state[d] the substance of any of the claims that were summarily denied, nor provide[d] an explanation why summary denial was inappropriate or what factual determination

14

was required on each claim." Doorbal II, 983 So. 2d at 482–83. That procedural rule has been applied regularly in Florida courts. Simmons v. State, 934 So. 2d 1100, 1111 n.12 (Fla. 2006) ("We also find that Simmons' claim that the prosecutor made improper remarks concerning the mtDNA evidence on Simmons' car seat is waived because Simmons' counsel did not properly brief this issue for appeal."); Lawrence v. State, 831 So. 2d 121, 133 (Fla. 2002) ("Because Lawrence's bare claim is unsupported by argument, this Court affirms the trial court's summary denial of this subclaim."); Carroll v. State, 815 So. 2d 601, 609 n.7 (Fla. 2002) ("Carroll alleges that the trial court erred in summarily denying claims . . . in his amended 3.850 motion as being procedurally barred or without merit. On appeal, however, Carroll fails to assert any definitive argument as to this issue. Thus, we find this issue is insufficiently presented for review."); Shere v. State, 742 So. 2d 215, 217 n.6 (Fla. 1999) (Because "Shere did not present any argument or allege on what grounds the trial court erred in denying [his] claims[, w]e find that these claims are insufficiently presented for review."); Duest v. Dugger, 555 So. 2d 849, 852 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."); Denmark v. State, 116 So. 757, 759 (Fla. 1928) ("[A]ssignments of error . . . may likewise be treated as abandoned . . .

15

because the brief contains no argument, principle of law, or citation of authority in support of the assignments."). The rule satisfies the requirement that it be "firmly established and regularly followed" to be an independent and adequate ground under state law. See Payne v. Allen, 539 F.3d 1297, 1313 (11th Cir. 2008).

Doorbal fails to present any argument that would allow him to overcome his procedural default. "Because [the procedural] rule was an independent and adequate state ground, we are barred from habeas review of [Doorbal's] ineffective-trial-counsel claim[] unless he shows cause and prejudice to overcome [Florida's] procedural bar." Id. at 1314. If Doorbal cannot prove cause and prejudice, "he . . . must show that but for constitutional error at his sentencing hearing, no reasonable juror could have found him eligible for the death penalty under [state] law." Baldwin v. Johnson, 152 F.3d 1304, 1319 (11th Cir. 1998) (internal quotation marks omitted). Doorbal has failed to allege cause and prejudice or actual innocence that would excuse the procedural default of his claim of ineffective assistance of counsel, and "[h]e is therefore barred from raising it now." See Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006).

Doorbal's alternative argument that he did not default under the state rule of procedure because he did not appeal the merits of the order of the trial court fares no better. Doorbal argues that he "elect[ed] to pursue an appeal that attacked the

16

sufficiency of the order rather than the merits," but if that is true, then Doorbal failed to exhaust his claim of ineffective assistance of counsel and his petition still is barred from federal review. A state prisoner may not seek federal habeas review unless he has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); see Cone, 129 S. Ct. at 1781 ("A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration . . . ."). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). The Supreme Court has explained that exhaustion requires a round of appellate review:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

Id. at 845, 119 S. Ct. at 1732. If Doorbal failed to appeal the denial of his claim of ineffective assistance on the merits, then he failed to exhaust his state remedies.

Doorbal faces a double-edged sword. Either argument he advances leads to the same conclusion: His claim of ineffective assistance of counsel is barred from

17

federal review.  The district court did not err when it denied his petition.

## IV.  CONCLUSION

The denial of Doorbal's petition for a writ of habeas corpus is **AFFIRMED.**