[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13469

_____

CARLOS PADILLA,

Plaintiff-Appellant,

*versus*

VINCENTA BONET SMITH,
BONET & SMITH, PC

Interested Parties-Appellees,

REDMONT PROPERTIES LLC,
REDMONT PROPERTIES EG LLC,
REDMONT PROPERTIES OF HOMEWOOD LLC,
FRED G. NUNNELLY, III,

RM MANAGEMENT, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:17-cv-01826-MHH

_____

Before ROSENBAUM, TJOFLAT, Circuit Judges, and STEELE,[*] District Judge.

TJOFLAT, Circuit Judge:

The controversy in this case is rooted in the propriety of a lawyer charging a wage earner a contingent attorney's fee for prosecuting the wage earner's Fair Labor Standards Act ("FLSA") claims in a U.S. District Court.  The wage earner paid the contingent fee and then sued his lawyer in Alabama state court to recover part of the fee.  That court stayed the action so the wage earner and his lawyer could present the attorney's fee controversy to the District Court that had presided over the FLSA case.  They did so, filing motions the District Court lacked subject matter jurisdiction to

_____

[*] The Honorable John Steele, United States District Judge for the Middle District of Florida, sitting by designation.

entertain. At the end of the day, the District Court found the contingent fee excessive, ordered the lawyer to return the attorney's fee, and dismissed the proceeding as moot. This appeal followed. We dismiss the appeal because the District Court lacked subject matter jurisdiction.

## I.

## A.

Carlos Padilla believed his employer owed him back wages and overtime. He spoke with an attorney, Vicenta Bonet-Smith, who agreed. On October 30, 2017, she filed a collective action[1] complaint on behalf of Padilla and similarly situated employees in the United States District Court for the Northern District of Alabama, alleging a claim against Redmont Properties, LLC, Redmont Properties E.G., LLC, Redmont Properties of Homewood, LLC, and Fred G. Nunnelly III. In the complaint, Padilla sought relief in the form of unpaid wages, unpaid overtime, and liquidated damages, as well as statutory attorney's fees, under the FLSA, 29 U.S.C. § 201, *et seq.* Prior to filing the lawsuit, on June 23, 2017, Padilla signed an Attorney-Client Retainer Agreement with Bonet &

---

[1] A FLSA collective action is different from a Rule 23 class action because in a class action, each person within the class description is considered a class member and is bound by the judgment unless they have opted *out* of the suit; in a collective action, however, no person is bound by the judgment unless they have affirmatively opted *into* the action by giving written, filed consent. *Calderone v. Scott*, 838 F.3d 1101, 1103–04 (11th Cir. 2016); 29 U.S.C. § 216(b).

Smith, P.C.  Padilla agreed that he would pay Bonet & Smith 40% of any recovery as an attorney's fee if his claims were settled before filing suit and that he would pay Bonet & Smith 45% of any recovery if suit was filed.

Three months after filing the complaint, Bonet-Smith filed a first amended complaint adding RM Management, LLC as a defendant.[2]  In addition to the FLSA collective action claim, Padilla brought claims against Redmont for employment discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.[3]

On March 6, 2018, Padilla sought leave to file a second amended complaint adding Demetrio Padilla ("D. Padilla") and Jorge Ortiz as named plaintiffs in the FLSA collective action and

---

[2] Hereinafter, all defendants are collectively referred to as "Redmont."

[3] This first amended complaint, however, was not filed in compliance with Fed. R. Civ. P. 15(a) because Bonet-Smith never requested leave to file an amended complaint from the District Court.  Rule 15(a) allows one amendment as a matter of course within 21 days of serving the complaint or within 21 days of receipt of a responsive pleading.  Otherwise, a party must seek leave from the court.  Padilla's initial complaint was filed on October 30, 2017; Redmont's answers were filed on December 7, 2017.  The first amended complaint was not filed until January 31, 2018—well outside the 21-day window.  Redmont filed a motion to strike the first amended complaint for this reason.  Because, as discussed above, Padilla requested—and the District Court granted—leave to file a second amended complaint, which would become the operative pleading, the District Court denied Redmont's motion to strike as moot.

asserting claims for employment discrimination.[4]  The District Court granted this motion, but ordered the plaintiffs to file their second amended complaint as a separate docket entry.  Based on the wording of the District Court's order, it is clear the Court's intent was that the second amended complaint would not be operative until it was separately filed.[5]  Because Bonet-Smith never filed it, the second amended complaint was not properly before the District Court.[6]

Each of the three plaintiffs and Redmont subsequently entered into two separate agreements—for a total of six separate agreements.  For each plaintiff, one agreement would settle the plaintiff's FLSA claims, and one would settle his employment discrimination claims.[7]  Under Padilla's FLSA settlement agreement,

---

[4] Many documents in the record refer to the "nonFLSA" claims and "nonFLSA" settlement.  This opinion uses the terms "Title VII and § 1981" and "employment discrimination" instead of "nonFLSA."

[5] The order stated: "On or before April 5, 2018, the plaintiffs *shall file* as a separate docket entry their second amended complaint . . . . Because the plaintiffs' second amended complaint *will become* the operative pleading, the Court denies as moot the defendants' motion to strike the plaintiffs' amended complaint."  Doc. 30 (emphasis added).

[6] However, by subsequently approving Redmont's settlement of the three plaintiffs' FLSA claims pursuant to the parties' joint motion for settlement approval, as discussed *infra*, the District Court tacitly accepted the second amended complaint as properly before the Court.

[7] The total amount of the settlements was $345,868.54, $70,868.54 of which Redmont paid Ortiz and D. Padilla for their FLSA claims before they retained

6                    Opinion of the Court                    20-13469

executed on April 26, 2018, Redmont would pay Padilla $65,660.78, minus applicable taxes and withholdings, for claimed unpaid wages, unpaid overtime wages, and liquidated damages. In addition, Redmont would pay Bonet & Smith $2,666.67 for attorneys' fees and costs in prosecuting Padilla's FLSA claims.

On the same day, Padilla and Redmont executed a confidential general release and settlement for Padilla's employment discrimination claims, which were settled for a total of $109,339.22. The settlement was divided as follows: (1) $10,000, minus applicable taxes and withholdings, would be paid to Padilla for claimed benefits; (2) $20,589.22, with no taxes or withholdings applied, covered claimed compensatory and emotional distress damages; and (3) $78,750.00 would be paid to Bonet & Smith for claimed attorneys' fees and costs, with no taxes or withholdings applied.

Thereafter, on May 3, 2018, the plaintiffs and Redmont jointly moved the District Court to approve the terms of the their agreements to settle their FLSA claims and to dismiss the action with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).[8] While the joint

---

Bonet & Smith as counsel. Of the remaining $275,000, $175,000 was to be paid to Padilla for his FLSA and employment discrimination claims and $50,000 was to be paid to Ortiz and D. Padilla each for their discrimination claims. The agreement included an additional $8,000 for Bonet-Smith's FLSA attorney's fee. The $2,666.67 attorney's fee discussed as part of Padilla's FLSA settlement was one-third of the overall $8,000 attorney's fee Bonet-Smith received for the FLSA claim.

[8] The joint motion for approval was necessary because, unlike most claims, a FLSA claim can only be settled by (1) a payment supervised by the Department

20-13469            Opinion of the Court            7

motion mentioned that the parties had reached agreements to set-
tle *all* of the plaintiffs' claims against Redmont, the motion was si-
lent as to the terms of the agreements to settle the plaintiffs' Title
VII and § 1981 claims.

On May 30, 2018, Padilla and Redmont executed an adden-
dum to the agreement settling Padilla's employment discrimina-
tion claims. They agreed that to the extent the District Court ap-
proved a FLSA attorney's fee above $2,666.67, Bonet & Smith
would refund to Redmont from the $78,750 paid to Bonet & Smith
the difference between the fee approved by the District Court and
$2,666.67—in other words, Bonet & Smith would reduce its fee un-
der the employment discrimination settlement by such amount.

Because the settlements and dismissal of the Title VII and
§ 1981 claims did not require court approval, while the parties' joint
motion was pending with the District Court, the plaintiffs and Red-
mont filed a joint stipulation dismissing all plaintiffs' employment

---

of Labor under 29 U.S.C. § 216(c) or (2) by "a stipulated judgment entered by
a court which has determined that a settlement proposed by an employer and
employees, in a suit brought by employees under the FLSA, is a fair and rea-
sonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food
Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).

8                    Opinion of the Court                    20-13469

discrimination claims with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)[9] on May 31, 2018.[10]

The District Court issued an order acknowledging that the parties filed a joint motion for approval of their FLSA settlement on October 5, 2018. The Court indicated it was in the process of drafting an order approving the joint motion with a few changes. The District Court would entertain objections to its amended version of the FLSA settlement until October 12, 2018.[11]

---

[9] The rule reads: "Subject to Rules 23(e), 23.1(c), and 66 and any applicable federal statute, the plaintiff may dismiss *an action* without a court order by filing . . . (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). A stipulation filed pursuant to this subsection is self-executing and dismisses the action upon becoming effective—a district court may not act after the stipulation becomes effective because the stipulation, once effective, divests the district court of jurisdiction. *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012).

[10] The parties' stipulation of dismissal of the Title VII and § 1981 claims, however, had no legal effect because it did not dismiss the *action*. And "[t]his Court has made abundantly clear that a Rule 41(a)(1) voluntary dismissal disposes of the *entire* action, not just some of the plaintiff's claims." *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021) (emphasis in original).

[11] The only change the District Court made to the FLSA settlements was that it limited the enforceability of a provision allowing the settlement agreements to be introduced as a complete defense to any claims existing as of the date of the FLSA agreement that the plaintiff could have asserted against Redmont. The Court found that language too broad and limited it to *FLSA* claims existing as of the date of the FLSA settlement agreement, not all claims.

On November 30, 2018, the District Court issued a memo-
randum opinion approving the parties' proposed FLSA settle-
ment—Padilla's settlement consisting of $65,660.78, minus applica-
ble taxes and withholdings, and $2,666.67 in attorney's fees.[12]  The
District Court approved the FLSA settlements without a hearing,
based solely on the parties' submissions.  The Court then issued an
order dismissing the action with prejudice and asking the Clerk to
close the file.[13]

As per the terms of the settlement agreements, Padilla re-
ceived the following payments from Redmont: $45,962.55 for the
FLSA settlement ($65,660.78 less $19,698.23 in taxes and withhold-
ings), $20,589.22 for compensatory and emotional distress damages
caused by the employment discrimination, and $7,000 for benefits
deprived by the employment discrimination ($10,000 less $3,000 in
taxes and withholdings).

B.

Prior to the District Court's approval of the FLSA settle-
ments and its dismissal of the action, Padilla, apparently dissatisfied

---

[12] As mentioned above, in approving the FLSA settlement with the two addi-
tional named plaintiffs, Ortiz and D. Padilla, the District Court implicitly
found the second amended complaint to be operative.

[13] Because the parties' stipulation of dismissal was not effective, the effect of
this order on the Title VII and § 1981 claims was that it dismissed them with
prejudice.  This left the parties with separate settlement agreements that dis-
posed of the employment discrimination claims without court intervention.

with Bonet-Smith's representation and concerned with the amount of his recovery under his settlement agreements, contacted attorney Freddy Rubio of Rubio Law Firm on or about August 6, 2018. He did so without informing Bonet-Smith.

Following the entry of the District Court's order approving the FLSA settlements, on January 14, 2019, Rubio Law Firm wrote Bonet & Smith, claiming that the firm owed Padilla $29,550.35.[14] The letter argued that while Padilla's retainer agreement with Bonet & Smith covered both the FLSA and employment discrimination claims, the District Court did not approve a 45% attorney's fee for the FLSA claim—it approved $2,666.67. The letter claimed that Bonet & Smith improperly calculated their fee based on either (1) a 45% attorney's fee from Padilla's $175,000.00 global FLSA, Title VII, and § 1981 settlement, or (2) a 72% fee from Padilla's $109,339.22 Title VII and § 1981 settlement.[15]

Bonet & Smith responded on January 28, 2019, claiming that Rubio had been improperly giving legal advice to Padilla and that

---

[14] The letter is mistakenly dated January 14, 2018.

[15] Under the retainer agreement, Bonet & Smith was entitled to receive 45% of the $65,660.78 sum that Padilla received for the settlement of his FLSA claims, which would be $29,547.35. In essence, in his letter to Bonet & Smith, Rubio argued that in executing the agreement that settled Padilla's FLSA claim, Padilla and Bonet & Smith effectively amended the retainer agreement such that Bonet & Smith would not receive 45% of Padilla's FLSA recovery but $2,666.67, the fee the District Court approved.

he had been "secretly enticing Mr. Carlos Padilla behind [Bonet & Smith's back] for several months." Letter from Bonet & Smith to Rubio Law Firm (Jan. 28, 2019), Doc. 38-9. Bonet & Smith also stated that Padilla received the maximum FLSA dollar amount, regardless of how the settlement was structured, and that Padilla signed all the documents and knew what the terms were.

Following a lack of resolution by Bonet & Smith, Padilla, now represented by Rubio Law Firm, filed suit against Bonet & Smith in the Circuit Court of Jefferson County, Alabama, to recover $29,520.35. Padilla argued that Bonet & Smith breached their retainer agreement with him or, in the alternative, obtained unjust enrichment. With respect to the breach of contract claim, the complaint alleged that there was a valid and binding contract—the retainer agreement—between Padilla and Bonet & Smith whereby Bonet & Smith would receive 45% of any recovery if a lawsuit was filed, and that Bonet & Smith breached that contract when it retained more than 45% of the employment discrimination settlement.[16] Regarding the unjust enrichment claim, the complaint alleged that Bonet & Smith either (1) received a total of $8,000.00 in legal fees[17] and costs for work related to the FLSA

[16] That is, Bonet & Smith was entitled to 45% of Padilla's $109,332.22 employment discrimination settlement, or $49,202.65 and they breached that agreement by taking $78,750, or 72%.

[17] This is the attorney's fee negotiated as part of the FLSA settlements with the three plaintiffs. Padilla's portion of this fee was $2,666.67.

claims and then retained an additional $29,520.35 for attorney fees and costs related to the same claims, or (2) took 72% of the recovery—an unreasonable and unjust fee—in the employment discrimination settlement.[18]

Bonet & Smith moved the Circuit Court to dismiss the complaint, but the Circuit Court denied the motion. It stayed the case, however, so the parties could present their dispute to the District Court. The Circuit Court was concerned that it might encroach on the District Court's jurisdiction if it decided the breach of contract and unjust enrichment claims.

On October 1, 2019, Bonet & Smith moved the District Court to hold a hearing to resolve the fee dispute. Bonet & Smith attached five documents to its motion: (1) the complaint Padilla filed in the Circuit Court of Jefferson County; (2) Bonet & Smith's alternative state court motions to dismiss or for judgment on the pleadings; (3) the Circuit Court's order denying the motions; (4) the contingency fee contract; and (5) a record of the hours Bonet-Smith spent on the case.

---

[18] Padilla is treating the retainer agreement as having been modified by the court-approved settlement of his FLSA claim, such that instead of receiving an attorney's fee of 45% of Padilla's FLSA settlement, or $29,547.35, Bonet-Smith received $2,666.67. On the employment discrimination claims, then, Bonet-Smith was entitled to receive 45% of $109,339.22, or $49,202.65, instead of 45% of $175,000, or $78,750.

In its motion for a hearing, Bonet & Smith stated that Padilla's state law claims were based in part on the assumption that contingency fee contracts, like the one it had with Padilla, were not permissible under the FLSA.  Bonet & Smith contended that in the circumstances of the case, the 45% fee was appropriate and Padilla agreed to pay it.  Bonet & Smith asked the District Court to hold a hearing to:

> address the issues presented by Padilla's complaint and [the Circuit Court's] Order in the State Court Action.  Furthermore, to the extent this Honorable Court finds that a fairness hearing should be held to address the reasonableness of the attorney's fees and/or disbursements made as to the total settlement and recovery should be had, the undersigned counsel welcomes such opportunity.

Mot. for Hr'g, Doc. 37 at 11.[19]

In response to Bonet & Smith's motion, Padilla filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(3),

---

[19] In effect, Bonet & Smith was attempting to remove the litigation of the attorney's fee controversy from the Circuit Court to the District Court.

14    Opinion of the Court    20-13469

60(b)(6),[20] and 60(d)(3)[21] on December 2, 2019.[22] Padilla's motion *did not* seek relief from the judgment he had obtained against Redmont (in the form of an order approving the FLSA settlement) on the ground that Redmont had committed a fraud on the Court. Redmont had done nothing wrong. Pursuant to the FLSA settlement agreement the Court had approved, Redmont had paid Padilla the full amount of unpaid wages claimed: $65,660.78. What Padilla sought was an order requiring Bonet & Smith to pay him $29,547.35, based on a claim that Bonet & Smith had received an excessive contingency fee of 72%, or $78,750, from the settlement of his employment discrimination claims of $109,339.22, as opposed to a fee of 45%.

---

[20] The pertinent text of Rule 60(b) reads: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief."

[21] According to Rule 60(d): "This rule does not limit a court's power to: . . . (3) set aside a judgment for fraud on the court."

[22] All motions under Rule 60(b) must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). In addition to the "reasonable time" requirement, motions under Rule 60(b)(3) have a strict one-year deadline for filling. *Id.* Because November 30, 2019—one year from the day the District Court entered the order of dismissal—was a Saturday, the motion filed on Monday, December 2, 2019 is considered to have been filed within that one year window. That it was filed within one year of the final order, however, does not automatically mean the motion was filed within a reasonable time for Rule 60(b) purposes.

Padilla's Rule 60 motion alleged that Bonet & Smith obtained the excessive contingency fee by defrauding the District Court. The fraud was Bonet & Smith's failure to reveal to the Court the existence of the retainer agreement Padilla signed before filing suit. This failure to disclose constituted "a misrepresentation to[] the Court." Mot. for Relief from J., Doc. 38 at 2.

In the motion's "prayer for relief," Padilla asked the District Court to decide the issues presented in his action in the Circuit Court of Jefferson County[23] or, alternatively, to "allow[ ] the State case to proceed."[24]

_____

[23] The prayer for relief asked the District Court to provide the relief Padilla sought in the Circuit Court of Jefferson County including a "find[ing] that Bonet & Smith improperly charged [him] a 45% contingency fee, contrary to well-settled case law," and an "order that Bonet & Smith reimburse Mr. Padilla the amount charged as a contingency fee," i.e., $29,547.35. Mot. for Relief from J., Doc. 38 at 20. We interpret the first quotation as requesting the District Court to adhere to its November 30, 2018, order approving the FLSA settlement and an attorney's fee of only $2,666.67 for Bonet & Smith. We interpret the second quotation as requesting the Court to order Bonet & Smith to reimburse Padilla for the contingency fee it received pursuant to the agreement settling the employment discrimination claims. The prayer for relief also sought an award (against Bonet & Smith) of interest on the $29,547.35 reimbursement, a reasonable attorney's fee for Rubio Law Firm for prosecuting the action in the Circuit Court of Jefferson County and the Rule 60(b) motion, and a sanction against Bonet & Smith "as the Court deemed appropriate." *Id.* at 20–21.

[24] The prayer for relief also asked the District Court to "modify the Final Order entered on November 30, 2018," which, as noted *supra*, approved Padilla and Redmont's joint motion for the approval of the FLSA settlement

Essentially, Padilla's motion, like Bonet & Smith's, attempted to litigate the state court breach of contract and unjust enrichment claims in the District Court. Padilla tried to use Rule 60 to avoid the retainer agreement and the settlement agreements that he signed, but it is, for all intents and purposes, the same breach of contract and unjust enrichment dispute in a different vehicle. Padilla was asking the District Court to find that the settlement agreement effectively amended the retainer agreement.

Bonet & Smith responded to Padilla's Rule 60 motion on December 10, 2019. Bonet & Smith claimed that the relief the motion sought was not available under Rule 60 because the motion *did not* seek relief from a final judgment or order of the District Court. Rather, the motion sought an order modifying the Padilla-Redmont agreement, as amended, that settled Padilla's employment discrimination claims on the ground that the $78,750 attorney's fee it awarded Bonet & Smith was excessive. As Bonet & Smith stated in its response, "Padilla's motion requests that the Court make findings and impose liability as it relates to the contractual relations between the attorney and client." Resp. in Opp'n to Mot. for Relief from J., Doc. 41 at 3. Bonet & Smith then argued that even if the relief Padilla requested was theoretically available under Rule 60, he failed to satisfy the Rule's requirements.

---

agreement. The Rule 60 motion does not reveal the modification it sought; thus, we disregard the motion's request for a modification.

20-13469            Opinion of the Court              17

After receiving Bonet & Smith's and Padilla's motions, the District Court held a telephone conference on December 11, 2019. Bonet-Smith, Rubio, David Warren, counsel for Redmont, and James Spinks, counsel for Bonet & Smith were all present at the conference.[25]  After hearing from the lawyers, the District Court concluded that it could not resolve the attorney's fee controversy without an evidentiary hearing and entered an order to that effect.

The evidentiary hearing took place on February 27, 2020. Bonet-Smith testified that Bonet & Smith's retainer agreement with Padilla was made after she informed Padilla that he had bona fide FLSA claims against Redmont.  The agreement provided that Bonet & Smith would receive a contingent fee of 45% of any recovery Padilla received if suit were filed.

Turning to the agreements she and Warren reached for the settlement of Padilla's, D. Padilla's and Ortiz's FLSA claims, Bonet-Smith acknowledged that she would receive $2,666.67 (a total of $8,000) as an attorney's fee for representing each of the plaintiffs.[26]

---

[25] At that hearing the Court indicated that it was trying to determine whether the dispute was "purely a state court matter" or whether it was "pertinent to [the] Court's judgment." Tel. Conf. Tr., Doc. 45 at 6-7.  According to Warren, the dispute in question was a breach of contract claim.

[26] The settlement agreements with respect to Ortiz's and D. Padilla's employment discrimination claims are not in the record; therefore, we are unaware of the attorney's fee those plaintiffs agreed to pay Bonet & Smith for handling those claims.  We do know from Warren's testimony at the hearing that those

Since $2,666.67 would not amount to 45% of Padilla's recovery, Bonet-Smith further acknowledged that to obtain a 45% contingent fee for handling Padilla's FLSA claims, the fee would have to be paid as part of the settlement Padilla received for his employment discrimination claims. So, in drafting the agreement settling those claims, Warren provided that Bonet & Smith would receive $78,750 (45% of $175,000). Warren also testified at the hearing. His testimony about the settlement agreements Padilla made with Redmont essentially coincided with Bonet-Smith's.

At the close of the evidentiary hearing, the District Court stated:

> The Court doesn't know whether what happened here is the consequence of poor lawyering that may rise to the level of incompetent or of intentional misrepresentation to the Court. I think there are other bodies that will have to sort through the record that has been created here and make that determination. The Court, however, believes it is necessary to set aside the settlement agreement.

Evid. Hr'g Tr., Doc. 63 at 139.

Several months after the hearing concluded, on June 19, 2020, Bonet & Smith moved the District Court to modify its November 30, 2018, order approving the settlement of Padilla's FLSA

---

two plaintiffs received $50,000 each in settlement of their discrimination claims.

claims.[27]   Bonet & Smith requested that the Court approve its at-torney's fee (for handling those claims) of $29,547.35 (45% of Pa-dilla's $65,660.78 FLSA recovery, per the retainer agreement) and reduce the amount of Padilla's FLSA recovery by the same amount.[28]   In modifying the November 30, 2018, order in this way, the Court would effectively modify the agreements that settled Pa-dilla's FLSA claims *and* Padilla's employment discrimination claims.   In the alternative, Bonet & Smith asked the Court to re-structure its retainer agreement with Padilla to provide for a FLSA attorney's fee pursuant to the lodestar approach in lieu of the

---

[27] This motion, like Bonet & Smith's earlier motion for a hearing, lacked a legal foundation.  It could not have had a foundation in law because Bonet & Smith was not a party to the original dispute between Padilla and Redmont. At best, Bonet & Smith's motion could be classified as a third-party response to Padilla's motion for Rule 60 relief.  The nature of Bonet & Smith's motions and the fact that, unless the Court modified the FLSA approval order, Red-mont was for all intents and purposes irrelevant to the post-dismissal proceed-ings, further underscores that the post-dismissal proceedings were an attempt to litigate a state court action for breach of contract and unjust enrichment in the District Court.

[28] As part of this proposal, Bonet & Smith would refund Redmont the $2,666.67 attorney's fee Bonet & Smith received pursuant to Padilla's FLSA settlement.   Padilla's FLSA recovery of $66,660.78 would be decreased by $29,547.35, and Padilla would receive $36,113.43.   Bonet & Smith's $78,750 attorney's fee under the employment discrimination settlement would like-wise be reduced by $29,547.35, making it $49,202.65.   Essentially, Bonet & Smith asked the District Court to retroactively approve what had already been done.   Aside from Bonet & Smith refunding $2,666.67 to Redmont, no other money would change hands.

$2,666.67 attorney's fee the Court had approved in its November 30, 2018, order.[29]

On August 18, 2020, the District Court entered an order denying Bonet & Smith's June 19, 2020, motion for an amended order of approval. In addition, the District Court *sua sponte* ordered Bonet & Smith to pay Padilla $29,547.35 of the fee it had received in the settlement of Padilla's discrimination claims.[30] The District Court ordered the payment because Bonet-Smith withheld from the Court information about the 45% contingent attorney's fee (called for by the Padilla-Bonet & Smith retainer agreement) when she and Warren submitted the joint motion to approve the FLSA settlement to the Court for approval.[31] Because requiring

---

[29] The lodestar approach calculates reasonable attorney's fee "by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541, 1544 (1984)). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). According to Bonet & Smith's records, Bonet & Smith attorneys expended 90.1 hours of billable time on Padilla's FLSA claim.

[30] The $29,547.35 represented part of the attorney's fee Bonet & Smith took from the recovery Padilla received in settling his employment discrimination claims.

[31] The District Court cited nothing in Rule 60 or the cases applying Rule 60(b)(3), (b)(6) or (d)(3) authorizing the monetary payment the District Court required Bonet & Smith to make. Nor did the Court draw on its inherent power in requiring the payment.

Bonet & Smith to pay Padilla $29,547.35 made Padilla whole, the District Court apparently concluded that Padilla's motion for Rule 60 relief was moot, so on August 18, 2020, in a separate order, the Court denied the motion for that reason.[32]

Padilla appeals the District Court's order denying his Rule 60 motion as moot. Padilla contends that the controversy his Rule 60 motion created is not moot because the District Court failed to consider his claims for (1) an attorney's fee to be paid to Rubio Law Firm for representing him in the action he brought in the Circuit Court of Jefferson County and in prosecuting his Rule 60 motion and (2) interest on the $29,547.35 Bonet & Smith must pay him. He also appeals the part of the District Court's order denying Bonet & Smith's June 19, 2020, motion that requires Bonet & Smith to pay him $29,547.35 because the Court provided that he would have to pay the attorney's fee Rubio Law Firm would charge him out of his own pocket.[33]

---

[32] Nothing in Padilla's Rule 60 motion sought this monetary relief as a Rule 60 remedy. What the motion sought was a resolution of the claims Padilla was asserting in the action pending in the Circuit Court of Jefferson County.

[33] The part of the District Court's order requiring Bonet & Smith to pay Padilla states: "Mr. Padilla shall compensate his current counsel from the refunded amount."

II.

Padilla appeals the order on the theory that the controversy created by his Rule 60 motion is not moot.[34] The motion sought the recovery of a reasonable attorney's fee for Rubio Law Firm for its prosecution of both the breach of contract action in the Circuit Court of Jefferson County and the Rule 60 motion. The motion also sought interest on the $29,547.35 attorney's fee Padilla paid Bonet & Smith out of the recovery he had obtained on his employment discrimination claims.[35]

It is important not to lose sight of the fact that Padilla's Rule 60 motion requested relief against Bonet & Smith, not Redmont. Padilla acknowledged that Redmont had paid him everything the District Court's order of approval required. Padilla's position was not that Redmont had committed a wrong that Rule 60 could remedy, but that Bonet & Smith had received an excessive attorney's fee for litigating his discrimination claims.

---

[34] Bonet & Smith, however, does not appeal the District Court's order, instead acknowledging "the Court's power and discretion to effect its judgment and [order the repayment of the fee]." Br. for Bonet & Smith, Appellate Doc. 36 at 14.

[35] The $29,547.35 is the amount that Padilla alleged was improperly taken from his employment discrimination settlement because it represented more than the negotiated 45% contingency fee. He moved the District Court to have Bonet & Smith pay interest on that amount beginning on November 30, 2018, the date of the final order of dismissal.

20-13469               Opinion of the Court                    23

We have jurisdiction over Padilla's appeal under 28 U.S.C § 1291 because it is the appeal of a final decision of a district court. That post judgment order is final because it left nothing to do and resolved all the issues in the post judgment motions. *Mayer v. Wall Street Equity Grp., Inc.*, 572 F.3d 1222, 1224 (11th Cir. 2012).

The issue the appeal expressly presents is a question of law that we review *de novo*: whether Padilla's Rule 60 motion is moot.[36] *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1282 (11th Cir. 2004).

Before we address that issue, however, we must determine whether the District Court had subject matter jurisdiction to entertain Padilla's Rule 60 motion in the first place.[37] *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S. Ct. 162, 165 (1934); *see also Absolute Activist Value Master Fund, Ltd. v. Devine*, 998 F.3d 1258, 1264 (11th Cir. 2021). Just as we must be mindful as to whether we have jurisdiction to entertain an appeal, *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1275 (11th Cir. 2012), we must also be

---

[36] Sometimes whether an appeal is moot is a mixed question of law and fact, in which case we review first the district court's findings of fact for clear error. Here, there is no dispute regarding the facts on which the District Court made its mootness ruling.

[37] If the District Court lacked subject matter jurisdiction to entertain Padilla's Rule 60 motion, we must dismiss this appeal and direct the District Court, on receipt of our mandate, to dismiss the motion (which we refer to in the text *infra*) for lack of jurisdiction.

mindful as to whether the trial court had jurisdiction of the controversy before it.

The controversy before the District Court was, in essence, the same controversy pending in the Circuit Court of Jefferson County. In that court, the controversy was in the form of a common law action for breach of contract. In the District Court, that controversy was presented in three separate motions. The first motion was Bonet & Smith's "Motion for a Hearing." The second motion was part of the relief prayed for in Padilla's Rule 60 motion. The third motion was Bonet & Smith's motion to modify the District Court's order approving the settlement of Padilla's FLSA claims to fix Bonet & Smith's attorney's fee at $29,547.35. In substance, all three motions are bound up in Padilla's appeal of the District Court's order. The question is whether the District Court had subject matter jurisdiction to entertain any of them. The answer is no.

The first motion presented the same cause of action as the one pending in the Circuit Court of Jefferson County, except that the parties were reversed. In the Circuit Court, Padilla was the movant. His theory was that the FLSA settlement agreement modified his contingency fee arrangement with Bonet & Smith in order to provide that the attorney's fee Bonet & Smith would receive for handling his FLSA claims would be $2,666.67 instead of 45% of his total FLSA recovery. In the District Court, Bonet & Smith was the movant. It sought (in substance) a declaration that the FLSA settlement agreement did not modify the contingency fee

20-13469               Opinion of the Court                25

arrangement and that it was entitled to receive 45% of Padilla's FLSA recovery.

Bonet & Smith's motion for a hearing failed to invoke the District Court's subject matter jurisdiction. The motion did not purport to remove the Jefferson County action to the District Court under 28 U.S.C. § 1441, nor did it purport to serve as a complaint for an independent action under the District Court's federal or diversity jurisdiction under 28 U.S.C. §§ 1331 or 1332.[38] The District Court therefore did not have jurisdiction over the motion.

Our jurisdictional disposition of the first motion controls our jurisdictional disposition of the third motion. The third motion assumed that the District Court somehow retained jurisdiction over Padilla's FLSA claims after approving the FLSA settlement agreement and entering an order dismissing the lawsuit with prejudice. The retained jurisdiction may have provided a basis for a motion by either party, Padilla or Redmont, for modification of the order approving the FLSA settlement agreement. But it could not have provided the basis for a motion for modification brought by a non-party to the FLSA action, such as Bonet & Smith. Indeed, nothing in Bonet & Smith's motion even purported to provide a

---

[38] While district courts may award attorney's fees in "independent proceedings supplemental to the original proceeding" and such requests are not "for a modification of the original decree," Bonet & Smith did not seek additional fees from *Redmont. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S. Ct. 2447, 2455 (1990) (citation omitted).

26                    Opinion of the Court                  20-13469

legal foundation for its request to modify an agreement to which it wasn't a party.

The second motion, Padilla's Rule 60 motion, if taken on its face, would appear to have fallen within the District Court's subject matter jurisdiction. It didn't, however, because Padilla filed the motion solely for the purpose of having the District Court decide the controversy he brought to the Circuit Court of Jefferson County. We explain.

A Rule 60 motion seeks relief from a judgment or order. On its face, that's what Padilla's motion sought—relief from the District Court's order approving the FLSA settlement agreement. But it didn't.[39] The jurisdictional problem, though, is that the motion didn't seek relief from Padilla's opposing party, *Redmont,* but from a third party to the FLSA litigation, Bonet & Smith. We need look no further than to the motion's alternative prayers for relief to appreciate that. First, the motion sought a declaration that *Bonet & Smith* could receive nothing more than $2,666.67 as an attorney's fee for prosecuting Padilla's FLSA claims and an order requiring

_____

[39] Rule 60 can only be used to set aside a prior order or judgment, not to grant additional affirmative relief. *United States v. One Hundred Nineteen Thousand Nine Hundred Eighty Dollars*, 680 F.2d 106, 107 (11th Cir. 1982). None of the relief Padilla sought in his Rule 60 motion asked the District Court to set aside its November 30, 2018, order approving the FLSA settlements and dismissing the action—which was the only relief available under Rule 60. To be sure, while Padilla didn't seek more affirmative relief from Redmont—he merely sought to reapportion *his* recovery—he also didn't ask the settlement *with Redmont* to be set aside.

*Bonet & Smith* to reimburse Padilla for the contingency fee it received for handling the employment discrimination claims, i.e., $29,547.35. Alternatively, the motion asked the District Court to allow Padilla to pursue his breach of contract action then pending in the Circuit Court of Jefferson County. None of these requests are within the scope of Rule 60.

*Bell v. Hood,* 327 U.S. 678, 66 S. Ct. 773 (1946), teaches that a district court may dismiss a baseless "claim" under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief or under Rule 12(b)(1) for lack of subject matter jurisdiction if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83, 66 S. Ct. at 776; *see also Blue Cross & Blue Shield. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998).[40]

A Rule 60 motion may be brought as "an independent action," Rule 60(d)(1), and thus as a "claim" the legal sufficiency of which may be judged under Rule 12(b)(6). So, from a functional point of view, Padilla's Rule 60 motion, which sought relief under Rule 60(b)(3), (b)(6), and (d)(3), was akin to an independent action or claim. As such, Padilla's motion was subject to being denied

---

[40] A dismissal under Rule 12(b)(1) is without prejudice because the district court lacked subject matter jurisdiction to adjudicate the controversy. A dismissal under Rule 12(b)(6) can be with prejudice (assuming the district court does not give leave to replead).

under Rule 12(b)(6) for failure to state a claim for relief or under Rule 12(b)(1) if it was "made solely for the purpose of obtaining jurisdiction" or was "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83, 66 S. Ct. at 776. Since Padilla brought his Rule 60 motion solely for the purpose of obtaining federal subject matter jurisdiction over the attorney's fee controversy, the motion failed to invoke the District Court's subject matter jurisdiction.[41]

---

[41] Dismissing a Rule 60 motion for lack of subject matter jurisdiction when it is not a "true" Rule 60 motion—i.e. when the motion does not seek Rule 60 relief at all, or does not seek Rule 60 relief on one of the grounds listed in Rule 60—is consistent with what we do with Rule 60 motions in the context of habeas proceedings. When a Rule 60 motion attacks the substance of the federal court's resolution of a petition's claim on the merits, as opposed to a defect in the integrity of the habeas proceeding, it is not truly a Rule 60 motion—it is a successive habeas petition. *Williams v. Chatman*, 510 F.3d 1290, 1294 (11th Cir. 2007) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532, 125 S. Ct. 2641, 2648 (2005)). When a Rule 60 motion qualifies as a second or successive habeas petition, it must comply with the requirements of such petitions. *Id.* at 1294. If it doesn't, the district court lacks jurisdiction to entertain it. *See, e.g.*, *Boone v. Sec'y., Dep't of Corr.*, 377 F.3d 1315, 1317 (11th Cir. 2004) (per curiam) (holding that the district court lacked subject matter jurisdiction over a Rule 60 motion because it was not brought to prevent a fraud on the court, but rather to reopen a habeas judgment based on intervening law).

Here, Padilla's Rule 60 motion was not a "true" Rule 60 motion because it did not seek relief from a final judgment or order in the form of setting aside that judgment or order. It sought to litigate the attorney's fee controversy between a plaintiff and his counsel and used a Rule 60 motion as a vehicle for getting federal jurisdiction over that controversy. Like a Rule 60 motion that is *really* a successive habeas petition, the District Court should have dismissed it.

To sum up, had Padilla's Rule 60 motion sought actual Rule 60 relief, the District Court would have had jurisdiction to entertain it because the District Court had jurisdiction over the underlying FLSA and employment discrimination controversy. But Padilla did not ask for—and the District Court did not grant—the type of relief authorized by Rule 60. Doing anything more than reopening the matter that had previously been dismissed, which is all Rule 60 allows, required an independent jurisdictional basis. The District Court did not have such an independent jurisdictional basis when it litigated the state court breach of contract action as if it had been brought under 28 U.S.C. § 1332. Because the District Court lacked subject matter jurisdiction to entertain the motions Padilla and Bonet & Smith filed, we are unable to entertain Padilla's appeal. We must dismiss the appeal and direct the District Court on receipt of our mandate to vacate its orders of August 18, 2020, and deny Bonet & Smith's and Padilla's motions for lack of jurisdiction.

⋆          ⋆          ⋆

This appeal is **DISMISSED**. On receipt of our mandate, the District Court is instructed to **VACATE** its orders of August 18, 2020, and **DENY** Bonet & Smith's and Padilla's motions for lack of subject matter jurisdiction.

SO ORDERED.